**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Jill K. Hanson, | ) | Case No. 25 B 05254 |
| | ) | |
| Debtor. | ) | Hon. Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION GRANTING U.S. TRUSTEE'S MOTION TO DISMISS**

The Bankruptcy Code provides a process for the honest but unfortunate debtor to obtain a discharge and fresh start.  The Bankruptcy Code is not a strategy for last-minute estate planning.  For that reason and others discussed below, the U.S. Trustee's motion to dismiss (Dkt. Nos. 11 & 34) is granted and this case is dismissed.

I.

This chapter 7 case was filed by attorney David L. Stretch on behalf of his client Jill K. Hanson on April 4, 2025.  (Dkt. No. 1)  At the time of her bankruptcy filing Mrs. Hanson had been ill for many months.  She suffered a stroke in 2024 and, over an eight-month period, was "treated in 4 different locations and was moved between those locations at least 17 times."  (Dkt. No. 31, Ex. 1, "Sequence of Events")  Mrs. Hanson's family describes an "on-going struggle to get her sufficient and continuous therapy" "complicated" by "perpetual challenges from her insurance company."  (*Id.*)  Mrs. Hanson battled cancer and kidney disease and suffered many physical ailments; she was, unfortunately, "in considerable pain" during "all of this."  (*Id.*)

According to Mrs. Hanson's husband and her brother, "at some point" during her illness her "family recognized" that she and her husband "needed to update their wills" which had originally been premised on the assumption that she would survive her much older husband. (*Id.*)  "As part of this activity, a review of Jill's current financial status was discussed and it

1

became very clear that she would need to file for bankruptcy." (*Id.*) Mrs. Hanson's family retained Mr. Stretch to represent her in a bankruptcy and, on January 17, 2025, Mrs. Hanson's brother paid him a retainer. (Dkt. No. 27, Resp. to Trustee's Mtn. to Examine Fees, ¶ 3 & Ex. 1)

It is unclear why it took so long after January 17, 2025, for the Debtor to file the anticipated bankruptcy petition, but is clear that this case was ultimately filed when Mrs. Hanson was on her deathbed. On March 24, 2025, Mrs. Hanson had given Power of Attorney to her husband, Gerald Hanson, including the authority "on my behalf to prepare, execute and file all required papers and instruments which are necessary for an effective filing under the United States Bankruptcy Code." (*Id.* ¶ 8; *see also* Dkt. No. 19, Ex. 2) Mr. Stretch states that he "prepared a *Contract for Legal Representation*" for Mrs. Hanson's husband to sign on the Debtor's behalf on April 4, 2025, but it was never signed. (Dkt. 27, ¶ 8)

Mrs. Hanson's death less than a week after the petition date has left no one, to the best of my knowledge, with the requisite authority to act on the now-deceased Debtor's behalf. The Debtor's death terminated the Power of Attorney that she had granted to her husband. (Dkt. 19, Ex. 2 ¶ 7 ("This power of attorney shall terminate on my death."))

It is also unclear *why* Mrs. Hanson "needed" to file for bankruptcy. Her Petition identifies liabilities between $100,000 and $500,000. (Dkt. No. 1, p. 6 ¶¶ 19-20) But her scheduled assets are limited to household goods, a few shares of stock worth less than $1,000, and a doll collection and IRA of "unknown" value. (*Id.* Schedule A/B at p. 2-3) The largest category of her debt (over $90,000 of the total debt of $142,828) is student loan debt. (*Id.* Schedule E/F at p. 16) I asked counsel why Mrs. Hanson needed to file for bankruptcy given that these debts cannot be collected from a deceased person; he was unable to specifically respond, other than to say he was not trying to protect her estate. (Dkt. No. 38, 6/25/25 Tr. 4-6)

II.

The clerk's office noted promptly after the petition date that the Certificate of Credit Counseling required by the Bankruptcy Code was not filed.  (Dkt. No. 7)  The Office of the United States Trustee then filed a motion to dismiss (Dkt. No. 11), arguing that the case should be dismissed under 11 U.S.C. § 707 because the Debtor had not completed the pre-petition credit counseling required by the Bankruptcy Code.  *See* 11 U.S.C. §§ 109(h), 521, 707(a).

In response, Mr. Stretch filed a motion to waive the credit counseling requirement. (Dkt. No. 23)  Many courts have waived the credit counseling requirement of sections 109 and 521 where (as here) the debtor died post-petition, noting that death is the ultimate disability.  *See, e.g.*, *In re Lizzi*, No. 09-10097, 2015 WL 1576513, at *7 (Bankr. N.D.N.Y. Apr. 3, 2015)(the "purpose of the requirement that a debtor completes a financial management course" is to "prevent a future reoccurrence of financial trouble," which is "rendered both meaningless and impossible where the debtor is deceased"); *In re Trembulak*, 362 B.R. 205, 207 (Bankr. D.N.J. 2007) (same); *In re Robles*, No. 07-30747-C, 2007 WL 4410395, at *1 (Bankr. W.D. Tex. Dec. 13, 2007) ("The court is confronted with the limits of its judicial power—it cannot require a [deceased] debtor to attend and complete the instructional course.").

But I saw more fundamental problems with proceeding further because the Debtor passed away less than a week after the petition date, before the administration of the bankruptcy case even got off the ground.  The Debtor is unable to facilitate this bankruptcy case by providing data, answering questions, and ensuring that errors or omissions in her schedules (if any) are fixed.  I cannot hold the Debtor responsible for any errors—even intentional ones—as she is deceased.  No one is available to sit for the meeting of creditors required of every debtor pursuant to 11 U.S.C. § 341.  These problems are exacerbated by the reality that the power of

3

attorney given to the Debtor's husband expired less than a week after the petition date and no one

has provided evidence of another person with legal authority to act on the Debtor's behalf.

So I entered an order directing the United States Trustee to supplement his motion to

dismiss to identify any additional issues that might support dismissal given the Debtor's death

less than a week after the petition date—it made more sense to get everything on the table now,

before additional resources are wasted if the case is futile.  (Dkt. Nos. 32–33)  In addition, given

that Mr. Stretch's attorney-client relationship with his client terminated on her death, *see, e.g.*, *In

re Estate of Simmons,* 841 N.E.2d 1034, 1035 (5th Dist. 2005) (applying Illinois law); *Johnson v.

Gregory County Auditor (In re Johnson)*, 402 B.R. 313, 314 (8th Cir. BAP 2009), it was unclear

who (if anyone) had authority to file pleadings on the Debtor's behalf, and seemed likely that

every filing since April 10 has been *ultra vires*.  For that reason, my order required whoever filed

a response on the Debtor's behalf to include evidence demonstrating his or her legal right to do

so.  (Dkt. No. 33)  In response, the U.S. Trustee supplemented his motion to dismiss (Dkt. No.

34), but no one filed anything new on behalf of the Debtor; the right to do so has now been

waived.  *See* Bankr. N.D. Ill., L.R. 9014-1(B).

III.

The U.S. Trustee's motion to dismiss requires me to apply several different parts of the

Bankruptcy Code and Rules.  The Bankruptcy Code and Rules place many burdens on debtors,

including the obligation to file all bankruptcy schedules (11 U.S.C. §§ 521(a)(1)-(2)), cooperate

with the trustee (*id.* § 521(a)(3)), surrender all estate property (*id.* § 521(a)(4)), provide the

trustee tax returns and pay advices (*id.* § 521(e)(2); Fed. R. Bankr. P. 4002(b)(2)) and appear for

a meeting of creditors to be examined under oath (11 U.S.C. §§ 341, 343).  The Code also places

burdens on case trustees, including collecting and liquidating property of the estate (11 U.S.C.

4

§ 704(a)(1)), investigating the debtor's financial affairs (*id.* § 704(a)(4)) and, if appropriate, objecting to discharge (*id.* § 704(a)(6)), furnishing information to other parties in interest (*id.* § 704(a)(7)), and filing reports concerning estate administration (*id.* § 704(a)(9)).

Deceased debtors cannot complete the tasks required by the Bankruptcy Code and Rules any more than they can take a financial management course they missed pre-petition. And it is at best unclear how a chapter 7 trustee can administer a bankruptcy case where the debtor died a few days after its filing, the trustee has no opportunity to examine the debtor, and no one knows (or at least has been willing or able to tell me) who (if anyone) can still act for the debtor.

But at the same time, Rule 1016 suggests a preference that chapter 7 cases continue if the debtor dies. It says "[d]eath or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred." Fed. R. Bankr. P. 1016. This language differs from that in the same rule for Chapter 11, 12, and 13 cases: such cases "may be dismissed" if a debtor dies, "or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred." *Id.* It isn't clear what to make of the different language used, but I think Rule 1016 suggests a *presumption* that death terminates a Chapter 11, 12, or 13 case but not a Chapter 7 case. That reading seems consistent with the cases examining the issue, and the Debtor's now-former counsel refers me to a law review article that canvassed "what courts actually do in bankruptcy cases on the demise of the debtor" and concluded "chapter 7 cases almost invariably continue to be administered after the death of the debtor." Laura B. Bartell, *Bankruptcy and the Deceased Debtor: Rule 1016 in Practice*, 94 AM. BANKR. L.J. 523, 523-24 (2020).

IV.

No one cites authority on point here, where the debtor filed a chapter 7 case on her deathbed for unclear reasons that must (by definition) be unrelated to the core bankruptcy purposes of securing a fresh start for the debtor and ensuring a fair payment process for creditors. By contrast, in cases like those relied on by the Debtor's former counsel, it made eminent sense for the bankruptcy case to survive a debtor. *In re Doyle*, 209 B.R. 897 (Bankr. N.D. Ill. 1997) was a joint Chapter 7 filing where the wife died three weeks post-petition and her surviving co-debtor husband (who continued to prosecute the case for himself and her estate) sought to enforce claimed exemptions on his and her behalf. There, Judge Squires rejected the case trustee's objections to the couple's exemptions or her discharge, holding that "a debtor who dies post-petition is entitled to claims of exemption as well as a discharge." *Id.* at 906. And the other case cited by Mr. Stretch, *In re Perkins*, 381 B.R. 530 (Bankr. N.D. Ill. 2007), was a Chapter 13 case where the debtor died post-confirmation, after paying into the case for eighteen months, and the debtor's probate estate sought not to substitute itself for the debtor as a party, but just to complete the payments to creditors promised in the confirmed Chapter 13 plan. In both situations it was entirely logical and benefitted all stakeholders for the cases to be fully administered to conclusion notwithstanding the debtor's death.

By contrast, it is unclear how *this* bankruptcy case could proceed or what purpose it would serve. The Debtor was very ill for months before her bankruptcy filing, the handwriting of her initials on the power of attorney signed two weeks before her death suggests that she was very weak at the time, and she died less than a week after the petition date. It is not at all clear what role Mrs. Hanson played in the preparation of the bankruptcy materials, what diligence was done before they were filed, and how accurate they are. Moreover, given that the Power of

6

Attorney initialed pre-petition by Mrs. Hanson expired on her death, all the filings by debtor's now-former counsel since April 10, 2025, have likely been *ultra vires* and probably (absent evidence that he had the right to file them) should be stricken. The Debtor obviously missed her Section 341 meeting (*see* Dkt. No. 5) which was scheduled for May 2025; no one appeared on her behalf. The chapter 7 trustee has been unable able to do anything to administer this chapter 7 case other than review the U.S. Trustee's motion to dismiss (*see* Dkt. No. 35).

I am persuaded by Judge Grant's analysis of a related question in *In re Shepherd*, 490 B.R. 338 (Bankr. N.D. Ind. 2013), when a representative of the debtor's probate estate moved to be "substituted" for the debtor to seek modification of a chapter 13 plan in order to save the deceased debtor's home for his heirs. Judge Grant denied the request, reasoning as follows:

> The absence of any mechanism to substitute someone or something else for a deceased debtor in bankruptcy proceedings makes sense when one considers the purposes of bankruptcy. One of them is to give debtors a "fresh start" so they can enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. After the debtor has died one does not need a bankruptcy proceeding to accomplish these goals. A debtor who has died has no need of a fresh start, and, where paying creditors is concerned, that can be accomplished through state probate proceedings. . . .
>
> Unlike a claim which can survive a plaintiff's death or even be sold by the plaintiff, the opportunity to seek bankruptcy and the discharge that results from it are personal to the debtor. Furthermore, a debtor's heirs do not become liable for the debtor's obligations simply because the debtor has died. Consequently, after a debtor's death there is no one who owns or succeeds to the debtor's opportunity to obtain a bankruptcy discharge. . . .
>
> [I]t may be instructive to consider the ability of a probate estate to be a debtor under the Bankruptcy Code. In this regard, it is universally held that a probate estate may not be a debtor. Only persons qualify for relief under title 11, and a probate estate is not a person. Even if it were, relief under Chapter 13 is available only to individuals—flesh and blood human beings—and a probate estate is not an individual. . . . Since a probate estate cannot file bankruptcy directly, it should not be permitted to do so indirectly by using a mechanism that does not exist. It cannot be substituted for the debtor.

*Id.* at 340–43 (internal quotations, citations, and footnotes omitted).

7

In addition, perhaps the case most on point is the Fifth Circuit's unpublished opinion in *In re Gee*, 204 F.3d 1115 (5th Cir. 1999). There, the debtor filed a chapter 13 case to save her home, and it was converted to chapter 7 about a month before she died. Her estate administrator sought dismissal because creditors would be better off in state probate proceedings than in bankruptcy, and certain heirs objected to dismissal, citing the portion of Bankruptcy Rule 1016 that they argued was definitive: "Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as if the death or incompetency had not occurred." The bankruptcy court dismissed the case because the debtor had died before she could complete the tasks required by the Code, and the Fifth Circuit affirmed, reasoning that:

> The language of Rule 1016 supports this interpretation. The Rule provides that the court administer and conclude the Chapter 7 case "in the same manner, so far as possible" as though the debtor's death had not occurred. This language suggests that the Code's provisions, including § 707(a), are to be applied as they otherwise would be. Rule 1016 also specifically contemplates courts considering the fact that the debtor has died after filing a petition. To suggest that courts must ignore the debtor's death entirely makes the Rule's phrase "so far as possible" meaningless.

*Gee*, 204 F.3d 1115, at *2.

Here, for the reasons described in the U.S. Trustee's motion to dismiss, it does not appear possible for the chapter 7 case to be administered. The Debtor's husband (who at the time had a valid power of attorney, but no longer does) filed this case when the Debtor's death was imminent. I am not confident that the Debtor played any role in the preparation of the filed schedules and statements given her health in the months between the retention of counsel and the filing. Short of a detailed examination of the probate estate (and no one has been identified to speak on its behalf), it is questionable whether the filed schedules (*see* Dkt. No. 1) are accurate. No one has suggested that she can appear at a section 341 meeting, where all debtors are required

8

to personally "appear and submit to examination under oath."  11 U.S.C. § 343.  No one has offered any evidence that she has legal authority to provide information about the Debtor to the chapter 7 trustee, the U.S. Trustee, or creditors.  At this point, no one (so far as I have been told) can legally act on behalf of the Debtor; the case cannot proceed without someone who can.  *See In re Ward*, 652 B.R. 250, 258 (Bankr. D.S.C. 2023) (dismissing chapter 13 case after debtor died and "it is unclear who would—or legally could—continue the administration of Mr. Ward's case even if the Court found that further administration was possible under the facts of this case").  And that has probably been true since April 10, 2025, despite the filings made (probably improperly) on the Debtor's behalf since.  (*See* Dkt. Nos. 19, 23, 31)

Finally, I think it makes sense to return to first principles.  "The federal system of bankruptcy . . . as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors.  Our decisions lay great stress upon this feature of the law—as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life."  *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918).  Where Debtors comply with their obligations under the Bankruptcy Code to secure a fresh start but unfortunately don't survive until the process is complete, it makes eminent sense for their cases to still be administered and processed to conclusion notwithstanding their death.  *See Perkins*, 381 B.R. at 532; *Doyle*, 209 B.R. at 906.  That is what Bankruptcy Rule 1016 contemplates.  But where a Debtor on his or her deathbed files a bankruptcy case for another reason (one here the Debtor's former counsel was unable to articulate), no bankruptcy purpose is served.  The probate process in state court is perfectly suited to address the needs of the Debtor's estate here.

V.

For these reasons, the U.S. Trustee's motion to dismiss (Dkt. Nos. 11 & 34) is granted.

Mr. Stretch's motion to waive the credit counseling requirements (Dkt. No. 23) is denied as

moot.  Separate orders will issue.


Signed:  November 3, 2025          By:  _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE